UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

GARY MILLER,

    Plaintiff,

vs.

THE BOEING COMPANY,

    Defendant.

Case No.: SACV 12-1775-DOC(RNBx)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22] AND DENYING PLAINTIFF'S MOTION TO AMEND [18]

    Before the Court are two items: (1) a Motion for Leave to File First Amended Complaint (Dkt. 18) filed by Plaintiff Gary Miller ("Plaintiff" or "Miller"); and (2) a Motion for Summary Judgment (Dkt. 22) filed by Defendant Boeing Company ("Defendant" or "Boeing"). After considering the moving papers and after hearing oral arguments on October 1, 2013, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion.

## I. Background

### a. Facts

Plaintiff Gary Miller worked at Boeing from April 2001 until he was fired in November 2010. From late 2001 until 2005 he was a Program Management Specialist supporting Homeland Security programs, and from 2005 until 2010 he was a Marketing and Sales Representative Manager. It is undisputed that, in early 2010, Boeing investigated Plaintiff for violating company policy regarding travel expenses and corporate credit cards, and that he was suspended for five days without pay as a result of the investigation. Boeing has submitted declarations and documentation showing that $45,917.92 had to be written off due to Plaintiff's unapproved charges, Casteel Decl. ¶ 6, Ex. A, and that Boeing issued Plaintiff a "Corrective Action Memo" requiring him to pay back $6,464.69 for personal expenditures and associated late fees, Harms Decl. ¶ 20, Ex. B. Plaintiff does not dispute that the investigation occurred, nor that he was suspended for violating company policy, but he points out that, after Boeing agreed to forgive the late fees, he only ended up paying "slightly over $1,000." Pl's Opp'n (Dkt. 33) at 3.

It is also undisputed that, after being warned in March 2010 that his chewing tobacco was a violation of Boeing's Tobacco-Free Workplace Policy, Plaintiff continued to chew tobacco at work until he was cited again in October 2010, prompting an investigation that ultimately led to his firing. Boeing submits evidence in the form of declarations, documentation, and deposition testimony that, because of Plaintiff's previous violations of company policy regarding credit card use and tobacco, and as the next step after unpaid suspension in the company's progressive disciplinary policy, Miller was fired by Director John Harms. Def's Mot. 9-10 (citing Harms Decl.; Campbell Decl.; Plaintiff's Deposition). Plaintiff does not deny that he chewed tobacco, but rather suggests that Boeing changed its company-wide tobacco policy—from one that prohibited only smoking to one that also prohibited all forms of tobacco use—merely as a pretext in order to terminate him. Pl's Opp'n at 26-27.

Plaintiff's central contention is that Michael Kurth, a senior executive who worked above Plaintiff from 2005 until 2007, somehow orchestrated Plaintiff's 2010 firing in retaliation for Plaintiff's complaints about unfair treatment at the hands of Kurth in October of 2005. Pl's Opp'n

at 5.  Plaintiff, without citing to the record, describes how Kurth "was much less qualified than Plaintiff but better connected inside BOEING," how Kurth "blocked and prevented [Plaintiff] . . . from developing and obtaining new business opportunities, assigned menial tasks, denied promotions, denied pay raises," and how all of this prompted Plaintiff to make a complaint about Kurth in 2005 that led to a series of escalating and unfair actions by many unnamed executives at Boeing designed to provide cover for his eventual termination.  *See id.*  Among the pretextual and retaliatory acts of "harassment" alleged by Plaintiff, again without citation to the record, were the following: "Defendants caused Plaintiff any procedural violation [related to travel expenses] in that Defendants eliminated the travel hot line assistance where Plaintiff would have been able to call for assistance;" and "Defendants changed the accounting system from January of 2010 through March of 2010 where Plaintiff was unable to submit the travel accounting."  *Id.* at 10.

It is undisputed, however, that Michael Kurth was transferred to an office in London in August 2007, an d that the two men had no interactions between 2007 and Plaintiff's firing.  Plaintiff supplies no evidence that Kurth had any involvement in any Plaintiff's disputes with Boeing from 2007 until his termination in 2010, but Plaintiff suggests that "even though Mike Kurth was in the UK when Plaintiff was terminated, there remains a question of fact as to whether or not Mike Kurth influenced the termination."  *Id.* at 14.

### b.  Procedural History

On November 14, 2011, Plaintiff filed a Complaint (Dkt. 1, Ex. 1) against Defendant in state court for (1) Breach of Contract and (2) Intentional Tort – Violation of California Labor Code 1102.5.  On October 15, 2012, Defendant filed a Notice of Removal (Dkt. 1) to this Court.  The Court set a deadline for the filing of all motions to amend pleadings: February 11, 2013.  *See* Scheduling Order (Dkt. 8) at 1-2.  The deadline to file summary judgment motions was August 19, 2013.  *See id.* at 3.

On August 16, 2013, Plaintiff filed a Motion for Leave to Amend Complaint (Dkt. 18).  On August 19, 2013, Defendant filed a Motion for Summary Judgment (Dkt. 22).

## II. Plaintiff's Motion to Amend

On August 16, 2013, over six months after the Court's Scheduling Order deadline for amendments, after the close of discovery, and only days before the deadline for filing motions for summary judgment, Plaintiff moved to amend his complaint to add two causes of action: 1) breach of implied covenant of good faith and fair dealing and 2) wrongful termination in violation of public policy. *See* Pl's Mot.

Plaintiff has not shown good cause, required by Rule 16(b), for the amendment. Rather, the Court suspects that it was filed as an attempt to delay or confuse motions for summary judgment, due just three days after Plaintiff filed his motion to amend. Such delay would prejudice Defendant, drawing out this litigation and forcing Defendant to develop new theories that would address the elements of Plaintiff's proposed new claims.

Plaintiff was fired in 2010, filed his complaint in November 2011, and was thus involved in litigation for over 18 months leading up to the August 19, 2013, deadline. While Plaintiff states that he "erred on the side of caution to wait until discovery would confirm what Plaintiff suspected, i.e., bad faith on behalf of Defendant," Pl's Mot. at 3, the Court finds that Plaintiff's proposed additional causes of action do not credibly flow from any new information that came to light during discovery. Plaintiff's purported "new information" that led to this motion—the fact that the man who fired Plaintiff, John Harms, called Michael Kurth *after Plaintiff was fired*—does not significantly change Plaintiff's case. Furthermore, the fact that Plaintiff indicated to Defendant that he was considering amending his complaint as early as March 2013, but he failed to act until the eve of summary judgment, suggests to this Court that amendment would be improper and extremely prejudicial.

Accordingly, Plaintiff's Motion is DENIED

### III. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment against Plaintiff, arguing that, weighing all the evidence in the light most favorable to Plaintiff, Plaintiff has failed to show that a triable issue of fact exists.

    **a. Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252. A court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

### b. Analysis

#### i. Plaintiff's Second Cause of Action

Plaintiff states that he "does not oppose summary judgment on the Plaintiff's Second Cause of Action" for Violation of California Labor Code section 1102.5. Pl's Opp'n to Def's Statement of Uncontroverted Facts (Dkt. 41) at 76, 81, 97. Accordingly, and after considering all briefing on

the issue, the Court finds that Plaintiff has not created any triable issue of fact and GRANTS Defendant's motion as to Plaintiff's Second Cause of Action.

### ii. Plaintiff's First Cause of Action for Breach of Contract

Defendant's brief in support of its motion for summary judgment cites to specific facts in the record that are based on admissible evidence in the form of (1) sworn witness declarations; (2) Plaintiff's deposition admissions; and (3) authenticated documents. These uncontroverted facts establish that Plaintiff was investigated for misusing his corporate credit card, found to have misused that card, punished with suspension from work, and found to be in violation of Boeing's tobacco policy, all leading up to his firing in 2010. Defendant further argues that Plaintiff has provided no credible evidence for the theory that his former supervisor, Michael Kurth, whom he last encountered in 2007, orchestrated his firing in 2010 by persuading multiple Boeing executives across the globe to change company-wide policies in order to ensnare Plaintiff in pretextual violations, all as retaliation for a complaint made by Plaintiff against Kurth in 2005.

In opposition, Plaintiff has filed a brief that does nothing to challenge the facts outlined above. Rarely citing to the record, Plaintiff regularly relies on what appear to be self-serving characterizations of Kurth and other Boeing employees in order to support his narrative of a years-long plot to thwart his success at the company. *See, e.g.,* Pl's Opp'n at 5 ("[S]ometime after April of 2005, Mike KURTH . . . replaced Ron Maehl (V.P. of B.D. Strategy), who was much less qualified than Plaintiff but better connected inside BOEING than Plaintiff. . . . Claudia Davis was immediately assigned as Plaintiff's supervisor. She was Plaintiff's contemporary in rank and position , but was not a CTL, yet she was to manage and supervise Plaintiff's CTL activities."). Plaintiff's assertions, when they are not irrelevant, do not lend credible support to Plaintiff's theory of retaliation.

While the parties dispute whether or not Plaintiff's employment should properly be characterized as "at-will," or if Defendant's company policies against retaliation should be interpreted as contractually binding on Boeing, the Court finds that it need not reach that issue. Ultimately, all of Plaintiff's arguments fail because Defendant has presented uncontroverted evidence that Plaintiff's firing was the result of his behavior in violation of Boeing policies, and

Plaintiff has submitted no credible evidence that would support a breach of contract claim. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *Walter Kidde & Co.*, 690 at 1238. Even viewed in the light most favorable to Plaintiff, the facts and arguments before the Court do not support Plaintiff's claim.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's First Cause of Action.

## IV. Disposition

Accordingly, for the reasons stated above, Plaintiff's Motion to Amend is DENIED and Defendant's Motion for Summary Judgment is GRANTED. Judgment will enter in favor of Defendant.

IT IS SO ORDERED.

DATED: November 13, 2013

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE